FILED

2021 May-27  AM 09:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **FREDERICK LAMAR BURNETT,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| | ) | **Case No. 5:20-CV-8011-SLB** |
| **vs.** | ) | **Crim. Case No. 5:16-CR-154-SLB-** |
| | ) | **SGC-1** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

This case is currently pending before the court on petitioner Frederick Lamar Burnett's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (Doc. 1; Crim. Doc. 119).[1]  Mr. Burnett seeks to vacate his sentence based on two claims of ineffective assistance of appellate counsel and one claim of denial of counsel during trial.  The government has filed a response in opposition to Mr. Burnett's Section 2255 motion, arguing that all of Mr. Burnett's claims are meritless.  (Doc. 10).  Mr. Burnett then filed a reply reasserting his claims.  (Doc. 11).  For the reasons set forth below, the court finds that

---

[1] Citations to documents in the court's record in petitioner's motion to vacate appear as "(Doc. __)."  Citations to documents in the court's record in the criminal proceedings against petitioner, Case No. 5:16-CR-154-SLB-SGC-1, appear as "(Crim. Doc. __)."  Page number citations refer to the page numbers assigned to the document by the court's CM/ECF electronic filing system.

Mr. Burnett's motion to vacate is due to be denied on the merits and this action dismissed.

## I.     BACKGROUND

On May 25, 2016, Mr. Burnett was charged by indictment with three counts of wire fraud in violation of 18 U.S.C. § 1343.  (Crim. Doc. 1 at 7).  The indictment charged that, between 2005 and 2009, Mr. Burnett—through his company Lamar—was awarded multiple contracts with the United States Department of Defense and the United States Army to provide baseball caps and backpacks to U.S. Army Recruiting Command; the contracts required, in accordance with United States statutory requirements, that the baseball caps and backpacks be "100% U.S. MADE."  (*Id.* at 1–7).  Mr. Burnett was charged with fraudulently obtaining his United States government contracts and purposely violating the terms of the contracts by using foreign vendors to increase his profits while taking steps—such as removing "made in China" tags and changing packaging—to fraudulently pass off the merchandise as being made entirely in the United States in compliance with the contracts.  (*Id.* at 8–16).  The indictment alleged that, between 2005 and 2009, Mr. Burnett "fraudulently provided Chinese made products on contracts totaling approximately $6,162,503.00."  (*Id.* at 16). According to the indictment, Mr. Burnett engaged in wire fraud on three occasions by transmitting electronic funds in interstate commerce by wire communication as

part of his fraudulent scheme; the three charges alleged the illegal transfer of $344,061.88 on September 27, 2006, $353,262.00 on March 11, 2008, and $785,807.88 on February 5, 2009, from the Defense Finance and Accounting Service to his own bank account as part of his fraudulent scheme.  (*Id.* at 17).

Mr. Burnett entered a plea of not guilty and proceeded to go to trial before a jury.  At trial, Mr. Burnett was represented by attorneys from the Office of the Federal Public Defender.  During the first days of trial, the government put on evidence from multiple witnesses to establish that Mr. Burnett defrauded the United States government by purposefully using Chinese-made goods to fulfill contracts he had solicited that required that products be made entirely in the United States.  (*See generally* Crim. Docs. 106, 107, 108, 109, 110).  On Friday, April 24, 2017—day five of Mr. Burnett's seven-day trial—the government finished presenting its evidence and Mr. Burnett's defense moved for a judgment of acquittal, arguing that the government had not proven intent to defraud.  (Crim. Doc. 110 at 35).  The government reasserted its evidence that Mr. Burnett was aware that the goods he produced were required to be 100% made in America, but that he purposefully obtained goods made in China and made them look as if they had been made in America.  (*Id.* at 38–54).  The court stated that there was "evidence as to all the allegations in the indictment" and as to all of the elements of wire fraud for each charge against Mr. Burnett.  (*Id.* at 55–59).

Mr. Burnett's counsel then brought up the issue of the statute of limitations as a basis for acquittal. (Crim. Doc. 110 at 59). Mr. Burnett's counsel argued that the government was relying on the Wartime Suspension of Limitations Act ("WSLA"), 18 U.S.C. § 3287, to suspend the running of the otherwise-expired statute of limitations, and asserted that whether the WSLA applied was a matter on which the government should have presented evidence to the jury. (*Id.*). The government responded that the operation of the statute of limitations and the WSLA was a legal matter for the court that should have been raised pretrial; the government also stated that the Eleventh Circuit case *United States v. Frediani*, 790 F.3d 1196 (11th Cir. 2015), was "directly on point as to fraud of any kind against the government being within the wartime statute of limitations." (*Id.*).

Like the government, the court noted that Mr. Burnett's defense team had not raised the statute of limitations issue pretrial; the defense responded that it was their position that there was no deficiency in the indictment that should have been raised pretrial, and that the jury had to find facts that the WSLA exception applied. (Crim. Doc. 110 at 60). Mr. Burnett's counsel stated that it was the defense's position that the allegations in the indictment, if proven, would show that the WSLA applied, but that those facts had to be found by the jury. (*Id.* at 63). The government argued that the WSLA applied because the United States was at war as required by the statute and because Mr. Burnett had perpetrated fraud against the

4

government.  (*Id.* at 63–65).  The court stated that it did not see the WSLA issue as being one that required a jury finding.  (*Id.* at 65).  The government then pointed out that another judge on this court had previously ruled that the statute of limitations was tolled in a similar case under the WSLA; the court said that it would consider the cases that the government had mentioned and then rule on the defense's motion for judgment of acquittal based on the statute of limitations.  (*Id.* at 66–70).

After moving for acquittal, Mr. Burnett's counsel told the court that they had not expected to put Mr. Burnett on the witness stand until the following Monday and that there were still a lot of exhibits that they needed to organize before Mr. Burnett took the stand.  (Crim. Doc. 110 at 77).  The court granted a request from defense counsel to wait to put Mr. Burnett on the stand until Monday, rather than putting him on the stand that afternoon.  (*Id.*).  The government asked for reciprocal discovery as to the defense exhibits, and the court directed the defense to have the information to the government by 5:00 pm Friday evening.  (*Id.* at 82).

The trial resumed on Monday and, before Mr. Burnett took the stand to testify on his own behalf, the court brought up the statute of limitations issue. (Crim. Doc. 111 at 3).  The court stated that the application of the WSLA was not a matter for the jury.  The court also stated that the issue would have been better presented in a motion to dismiss filed before trial, though the court noted that it did

not necessarily think the defense was "required" to raise the issue in a pretrial motion to dismiss. (*Id.*). The court directed the defense to file a brief on the issue to preserve it for appeal, but also remarked that the issue might already be waived. (*Id.* at 3–4).

At the beginning of the day on Tuesday, the final day of Mr. Burnett's trial, Mr. Burnett passed the court a note requesting a Rule 104 hearing—a preliminary hearing outside of the presence of the jury about whether a witness is qualified. (Crim. Doc. 112 at 3); Fed. R. Evid. 104. The court said that it would hold the hearing but, first, would let Mr. Burnett talk to his attorneys. (Crim. Doc. 112 at 4). The court stated that—according to Mr. Burnett's note—Mr. Burnett's attorneys had not been talking to their client because he was on the witness stand. The court then stated, "I don't say that that has to happen in a criminal trial [ . . . ] you all can talk to him right now, and we will look into whatever he wants to put on the stand." Mr. Burnett's counsel responded that they could resolve the matter through redirect and the court said that was fine. (*Id.*). The court subsequently stated for the benefit of the government that Mr. Burnett's lawyers had not been speaking to him since cross-examination began. (*Id.* at 5). The court noted that, to its recollection, it had never prohibited a defendant's counsel from talking to the defendant in a criminal trial at any time during cross-examination. (*Id.*). The government then stated that preventing the defendant from talking to counsel was

6

reversible error, and the court responded, "I'm glad I have never done it." (*Id.* at 5–6).  The court went on to say that it had allowed counsel to speak with Mr. Burnett, and his counsel said that they could clear up any issues on redirect. (*Id.* at 6).

After the close of evidence, the defense renewed its Rule 29 motion for acquittal.  (Crim. Doc. 112 at 74).  The court immediately denied the motion in part, finding that there was sufficient evidence to support conviction on all charges. (*Id.* at 74–75).  The court reserved judgment regarding the statute of limitations issue at that time.  (*Id.* at 75).  However, the court did determine that it would not present the statute of limitations issue to the jury or give a jury instruction on the issue.  (*Id.* at 88).  The court again mentioned that the failure of the defense to raise the statute of limitations issue pretrial might result in waiver of the issue.  (*Id.*).

The jury found Mr. Burnett guilty on all charges.  (Crim. Doc. 112 at 166); (Crim. Doc. 74).  After the jury returned the verdict, the court noted to Mr. Burnett that it "could not think of better lawyers to try your case" because Mr. Burnett's attorneys were so impressive and did "an outstanding job."  (Crim. Doc. 112 at 169).  The court also stated that the Eleventh Circuit's opinion in the *Frediani* case was dispositive on the statute of limitations issue, then denied acquittal based on the statute of limitations.  (*Id.*).

After his conviction, Mr. Burnett filed a "Motion to Determine Conflict of

Interest," requesting that the court determine whether there was a conflict of interest between Mr. Burnett and his attorneys because Mr. Burnett asked his attorneys to seek a new trial based on ineffective assistance of counsel. (Crim. Doc. 78). The court determined that there was no conflict of interest "because a claim of ineffective assistance of trial counsel is without arguable merit." (Crim. Doc. 79 at 1). The court stated that trial counsel's performance was "sterling" because counsel was "well prepared" and argued effectively. (*Id.* at 3). The court also stated that Mr. Burnett could not make the requisite showing of prejudice for a claim of ineffective assistance of counsel because the evidence against him "was so overwhelming." (*Id.*).

The court sentenced Mr. Burnett to 48 months' imprisonment on all three charges, to run concurrently. (Crim. Doc. 94 at 2). At his sentencing, Mr. Burnett said that he wanted to "renew [his] motion for a 104 hearing for my Sixth Amendment violation." (Crim. Doc. 101 at 20). When the court questioned Mr. Burnett on what exactly he was requesting, he said that he wanted a hearing for his "Sixth Amendment violation that happened during trial." (*Id.*). The court said that it had never seen better counsel than Mr. Burnett's, noted that his representation was "outstanding," and denied "any motion for any type of hearing." (*Id.* at 21). Mr. Burnett explained to the court that he could not speak with his lawyers during the weekend recess before he took the stand on the

Monday of his trial and during his testimony. (*Id.*). He said that his lawyers would not speak to him during that time, so he had no legal representation; Mr. Burnett stated that he wanted a hearing on the issue to preserve it for the record. (*Id.* at 22). The court again denied a hearing[2] and noted that Mr. Burnett had representation and had the right to choose if he wanted to testify; the court also repeated that it had never seen better representation than Mr. Burnett's counsel. (*Id.* at 22–23). The court reiterated that the evidence against Mr. Burnett was "overwhelming of [his] guilt." (*Id.* at 24).

Mr. Burnett timely filed a direct appeal. (Crim. Doc. 97). He raised three arguments on appeal: (1) that the district court had erred by excluding testimony from a witness for the defense; (2) that the district court had erred in calculating his loss amount; and (3) that his sentence was unreasonable. *United States v. Burnett*, 760 F. App'x 759 (11th Cir. 2019). On February 11, 2019, the Eleventh Circuit entered an opinion affirming Mr. Burnett's conviction and sentence. (Crim. Doc.

---

[2] As noted above, when it was brought to the court's attention during trial that the Defendant's counsel was allegedly not talking to their client during his cross-examination, the court informed counsel that they could speak to their client during his cross-examination and allowed them to speak with him privately before his cross-examination resumed. Of course, such conversation between Defendant and counsel had to occur during regularly scheduled breaks in the trial.

In civil trials, the undersigned's practice is generally not to allow conversation about the substance of the issues and facts in the case between lawyers and their clients during cross-examination. In criminal cases, defendants are obviously allowed to speak to their counsel about any issues during court breaks, including during cross-examination.

116-1).  Mr. Burnett did not file a petition for certiorari with the United States

Supreme Court.  As a result, his conviction became final on May 13, 2019.[3]

Mr. Burnett timely filed the instant Section 2255 motion on April 13, 2020.  (Doc.

1); (Crim. Doc. 119); *see* 28 U.S.C. § 2255(f) (setting forth the statute of

limitations for Section 2255 motions).

## II.   STANDARD OF REVIEW

After a defendant is convicted and sentenced, Section 2255 allows a federal

prisoner to file a motion in the sentencing court "to vacate, set aside or correct the

sentence" on the basis "that the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction

to impose such a sentence, or that the sentence was in excess of the maximum

authorized by law, or is otherwise subject to collateral attack."  28 U.S.C.

§ 2255(a).  A federal prisoner seeking relief under Section 2255 bears the burden

of proving his claims.  *See Beeman v. United States*, 871 F.3d 1215, 1221 (11th

Cir. 2017) (stating, in examining claims under *Johnson v. United States*, 576 U.S.

591 (2015), that "like any other § 2255 movant, a *Johnson* § 2255 claimant must

---

[3] "[W]hen a prisoner does not petition for certiorari, his conviction does not become 'final' for purposes of [§ 2255(f)(1)] until the expiration of the 90-day period for seeking certiorari."  *Kaufmann v. United States*, 282 F.3d 1336, 1338 (11th Cir. 2002).  Here, the ninetieth day from February 11, 2019, was May 12, 2019.  Because May 12, 2019, was a Sunday, Mr. Burnett's conviction became final on Monday, May 13, 2019.  *See* Fed. R. Civ. P. 6(a)(1) (governing computing of time).

prove his claim").  Where a prisoner seeks an evidentiary hearing, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  But "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*

## III.   DISCUSSION

Mr. Burnett raises three claims in his Section 2255 motion.  (Doc. 1; Crim. Doc. 119).  First, he asserts that his appellate counsel was ineffective for failing to raise arguments related to the WSLA.  (Doc. 1 at 30–56).  Second, Mr. Burnett asserts that he was unconstitutionally denied counsel during trial.  (*Id.* at 56–79).  Finally, Mr. Burnett argues that his appellate counsel was ineffective for failing to argue that the trial court violated his "protected autonomy right."  (*Id.* at 80–84).  Mr. Burnett seeks an evidentiary hearing on all of his claims.  The court will address each claim in turn.

### 1.  Ineffective Assistance of Appellate Counsel Regarding the WSLA

In his first claim for relief, Mr. Burnett raises two separate but related subclaims of ineffective assistance by his appellate counsel.  (Doc. 1 at 30–56).  He argues that his appellate counsel was ineffective for failing to argue that the trial court erred in denying his motion for acquittal based on the statute of limitations.

11

(*Id.* at 30–47).  He also argues that his appellate counsel was ineffective for failing to argue that the district court erred by excluding Mr. Burnett's requested jury instructions relating to the statute of limitations.  (*Id.* at 47–53).

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel," which are set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)).  To show ineffective assistance of counsel under *Strickland*, a petitioner must demonstrate that: (1) his counsel's performance was deficient such that the performance "fell below an objective standard of reasonableness"; and (2) he suffered prejudice as a result of that deficiency.  *Strickland*, 466 U.S. at 687–88.  To prove prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding.  *Id.*

In the appellate context, the Supreme Court has observed that "it is difficult to demonstrate that counsel was incompetent" for failing to raise a particular claim.  *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on

appeal." *Id.*  The Supreme Court has noted that, in fact, a "brief that raises every colorable issue runs the risk of burying good arguments [ . . . ] in a verbal mound made up of strong and weak contentions." *Jones v. Barnes*, 463 U.S. 745, 753 (1983).  Thus, "[a]ppellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir. 1984)).

### A. Statute of Limitations

In his first subclaim, Mr. Burnett asserts that his appellate counsel should have argued that the district court erred by denying his motion for judgment of acquittal based on the statute of limitations because the WSLA did not apply to his offenses, so the statute of limitations had already run for his charges.  (Doc. 1 at 30–47).  He argues that the WSLA did not apply to his charges because, while fraud was an element of his offenses, defrauding the United States specifically was not an essential ingredient of the elements of his wire fraud charges because the elements of wire fraud do not include the United States as a victim.  (*Id.*).  Mr. Burnett cannot succeed on his claim that his appellate counsel was ineffective because Mr. Burnett's WSLA claim could reasonably be considered to be without merit.  *See Nyhuis*, 211 F.3d at 1344.

Mr. Burnett was convicted of three counts of wire fraud in violation of 18

U.S.C. § 1343, which occurred between 2005 and 2009.  (Crim. Doc. 1 at 17).  The wire fraud statute applies where, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," a defendant makes a wire transmission in interstate commerce "for the purpose of executing such scheme or artifice."  18 U.S.C. § 1343.  The statute of limitations for wire fraud is typically five years.  18 U.S.C. § 3282.  Thus, under typical circumstances, the statute of limitations for Mr. Burnett's offenses would have run by 2014 because his last offense was committed in 2009; Mr. Burnett was not indicted until 2016.  (Crim. Doc. 1).

However, the WSLA provides an exception to the normal statute of limitations when the United States is at war.  *Frediani*, 790 F.3d at 1200.  The WSLA provides:

> When the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b)), the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces, or with any disposition of termination inventory by

14

> any war contractor or Government agency, shall be suspended until 5
> years after the termination of hostilities as proclaimed by a
> Presidential proclamation, with notice to Congress, or by a concurrent
> resolution of Congress.

18 U.S.C. § 3287.  The Eleventh Circuit has held that Congress authorized the use

of armed forces in response to the terrorist attacks on September 11, 2001, and for

the Invasion of Iraq, and those hostilities have not yet terminated.  *Id.* at 1200–01.

Thus, the WSLA is currently in effect and tolls the statute of limitations for

qualifying offenses.  *Id.*

Mr. Burnett does not contest that the WSLA is currently in effect, but

instead asserts that his appellate counsel should have argued that his wire fraud

charges were not the sort of offenses covered by the WSLA because the elements

of wire fraud do not require that the offense be against the United States.  (Doc. 1

at 30–47).  In support of his argument, Mr. Burnett relies heavily on the Supreme

Court's decision in *Bridges v. United States*, which held that "the wartime

suspension of limitations authorized by Congress is limited strictly to offenses in

which defrauding or attempting to defraud the United States is an essential

ingredient of the offense charged."  346 U.S. 209, 221 (1953).  However, *Bridges*

does not provide the compelling argument that Mr. Burnett believes it does, and

Mr. Burnett cannot show that his argument would have created a meritorious claim

on appeal.  So, he cannot show deficient performance or prejudice as to his

appellate counsel's performance.  *See Strickland*, 466 U.S. at 687–88.

As an initial matter, Mr. Burnett reads the holding in *Bridges* overly broadly. *Bridges* dealt with charges of fraudulent activity relating to naturalization; the Supreme Court held that the WSLA did not apply to those charges because "none of them involve[d] the defrauding of the United States in any pecuniary manner or in a manner concerning property." *Bridges*, 346 U.S. at 221. The case focused on whether "fraud is an essential ingredient" of an offense more than it focused on whether the victimhood of the United States was an essential ingredient of a charged offense. *Id.* at 222. Additionally, in a companion case decided the same day, the Supreme Court again dissected the fraud requirement of the WSLA and stated that the WSLA applies "to all offenses which are fairly identifiable as those in which fraud is an essential ingredient." *United States v. Grainger*, 346 U.S. 235, 244 (1953). While *Bridges* and *Granger* both hold that fraud must be an essential ingredient of an offense against the United States for the WSLA to apply, neither states the proposition that the "against the United States" requirement of the WSLA must be memorialized in the statute of conviction for an offense for the WSLA to apply. *See* 18 U.S.C. § 3287.

Emphasizing that point, cases in this Circuit and this district have applied the WSLA to charges in which the defendant's offense was against the United States but the general offense of conviction does not statutorily require that the offense be against the United States. For instance, in the Eleventh Circuit's *Frediani* case, the

WSLA applied to convictions related to fraud involving aircraft parts, a violation

of 18 U.S.C. § 38(a), which does not require that the fraud be against the United

States or any of its agencies. *Frediani*, 790 F.3d at 1197; 18 U.S.C. § 38(a).[4]

Similarly, prior to Mr. Burnett's conviction, another judge in this district ruled that

the WSLA applied to extend the statute of limitations for charges of wire fraud in

violation of 18 U.S.C. § 1343—the same statute under which Mr. Burnett was

convicted. *See Terry v. United States*, No. 512-CR-00455-RDP-TMP, 2018 WL

3475435, at *1, *4 (N.D. Ala. July 19, 2018) (opinion in postconviction action

summarizing the criminal proceedings). In the defendant's postconviction

proceedings, the court clarified that the defendant's appellate counsel was not

ineffective for failing to argue that the WSLA did not apply because the argument

lacked merit, as the WSLA applied to the defendant's fraud against the

government. *Id.* at *13 & n.4. The Eleventh Circuit later determined that the

defendant was not entitled to a certificate of appealability on the district court's

ruling in the defendant's postconviction proceedings because counsel was not

required to raise a novel claim of questionable merit. *Terry v. United States*, No.

18-13587-C, 2019 WL 4138400, at *1 (11th Cir. May 15, 2019), *cert. denied*, 141

---

[4] The appeal in *Frediani* dealt with the issue of whether hostilities were ongoing such that the WSLA applied; the Eleventh Circuit did not directly address the issue of whether the offense was covered under the substance of the WSLA. However, the absence of the issue suggests an understanding that an offense that does not list the United States as a victim under the statute can still qualify as a covered offense under the WSLA.

S. Ct. 406 (2020).

Mr. Burnett seeks to overcome the lack of favorable law in this Circuit by relying on cases from outside of the Eleventh Circuit, but his arguments are not compelling.  In his motion and his reply brief, Mr. Burnett cites the Tenth Circuit's decision in *United States v. DeLia*, 906 F.3d 1212 (10th Cir. 2018), to argue that his wire fraud was not covered by the WSLA because there was no element of proof requiring that the offense was committed against the government.  (Doc. 1 at 35, 45); (Doc. 11 at 16–19).  However, *DeLia* is distinguishable from Mr. Burnett's case.  In *DeLia*, the Tenth Circuit held that a healthcare fraud charge did not fall under the purview of the WSLA because health care fraud did not have defrauding the government as an element and

> [n]othing required the jury to find that [the defendant] had defrauded the federal government or a federal agency. In fact, the indictment alleged that DeLia had executed a scheme 'to defraud money and property owned by and under the custody and control of the Oklahoma Health Care Authority, a health benefit program.'

*DeLia*, 906 F.3d at 1220.  Thus, the court found that the WSLA did not apply because the defendant was not charged with defrauding the United States or a federal agency, but, rather, with defrauding a state agency.  *See id.*  In Mr. Burnett's case, on the other hand, the indictment clearly alleged that Mr. Burnett defrauded the United States government through his purposeful violations of contracts with the United States Department of Defense and the United States

Army.  (Crim. Doc. 1).  The indictment did not allege any other victim of the fraud, so—to find Mr. Burnett guilty of the offenses—a jury necessarily had to find that Mr. Burnett had defrauded the United States government.  Accordingly, the court does not find Mr. Burnett's reliance on *DeLia* compelling.

Mr. Burnett also relies on *United States v. Doost*, No. 1:17-CR-00109-APM, 2019 WL 1560114 (D.D.C. Apr. 10, 2019), a decision from the District Court for the District of Columbia, and *United States v. Kousisis*, No. 18-130, 2019 U.S. Dist. LEXIS 151502 (E.D. Pa. June 17, 2019), a case from the Eastern District of Pennsylvania.  (Doc. 11 at 17–19).  In *Doost*, the District Court for the District of Columbia found that charges of false statements and money laundering did not fall under the WSLA because neither of the charges "required proof of fraud to secure a conviction" or "require[d] fraud as an essential element."  *Doost*, No. 1:17-CR-00109-APM, 2019 WL 1560114, at *13–14.  Similarly, in *Kousisis* the District Court for the Eastern District of Pennsylvania found that charges of false statements did not fall under the WSLA because the elements of the false statement offenses did not require fraud.  *Kousisis*, No. 18-130, 2019 U.S. Dist. LEXIS 151502, at *45–*54.  Mr. Burnett's case is clearly distinguishable from *Doost* and *Kousisis* because, unlike charges of false statements and money laundering, his charges of wire fraud had fraud as an essential ingredient.  Further undermining Mr. Burnett's reliance on these cases, the defendants in both *Kousisis* and *Doost*

were also charged with wire fraud in violation of 18 U.S.C. § 1343—like Mr. Burnett—but did not challenge the timeliness of those charges under the WSLA. *Id.* at *2; *Doost*, No. 1:17-CR-00109-APM, 2019 WL 1560114, at *1, *12 n.5. Accordingly, *Doost* and *Kousisis* do not directly apply to Mr. Burnett's case, in which he seeks to argue that his wire fraud charges do not fall under the WSLA.

Finally, it is worth noting that Mr. Burnett's argument focuses on the first category of covered offenses under the WSLA, offenses "involving fraud or attempted fraud against the United States." 18 U.S.C. § 3287. However, his offenses could also qualify as covered offenses under the third category of the WSLA for offenses

> committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces.

*Id.* Mr. Burnett was convicted of wire fraud connected to the procurement and performance of contracts with the Department of Defense and the United States Army for Army recruitment efforts. (Crim. Doc. 1). Courts have applied the third category of the WSLA where defendants were engaged in fraud relating to recruiting for the armed forces. *United States v. Melendez-Gonzalez*, 892 F.3d 9, 14–15 (1st Cir. 2018) (holding that the WSLA applied to offenses including wire fraud that were related to National Guard recruitment, but not specifically

addressing which provision of the WSLA applied); *United States v. Jucutan*, 756 F. App'x 691, 692 (9th Cir. 2018) (holding that the district court correctly determined that the third prong of the WSLA applied to offenses relating to administration of the Army Reserve recruiting program).  Accordingly, in addition to falling under the first category of offenses covered by the WSLA, Mr. Burnett's offenses could also have fallen under the third category.

In light of the relevant law, Mr. Burnett cannot make the difficult showing necessary to prove that his appellate counsel was ineffective for failing to argue that the district erred by denying acquittal based on the statute of limitations and the WSLA.  *See Smith*, 528 U.S. at 288.  Mr. Burnett's counsel raised three issues on appeal.  *Burnett*, 760 F. App'x 759.  Counsel was not deficient for failing to raise an additional claim.  *See Smith*, 528 U.S. at 288.

Further, Mr. Burnett cannot show prejudice because he cannot show that there was a reasonable probability that the claim would succeed on appeal.  *See Strickland*, 466 U.S. at 694.  As discussed above, the law in this Circuit—which has applied the WSLA to offenses whose statutory language does not contain an element requiring that the United States must be a victim of the offense— undermines Mr. Burnett's argument.  *See Frediani*, 790 F.3d at 1197; *Terry*, No. 18-13587-C, 2019 WL 4138400, at *1 (11th Cir.).  Further, none of the law that Mr. Burnett cites actually states that "against the United States" must be part of the

statute of conviction for an offense.  The fact that Mr. Burnett was convicted on an

indictment in which the United States was the only alleged victim of his offenses—

which contained monetary fraud as an essential ingredient—makes a very

compelling argument that Mr. Burnett's fraud was against the United States such

that the first prong of the WSLA applied.  *See* 18 U.S.C. § 3287.  Finally, there is

also a good argument that the WSLA applied to Mr. Burnett's charges not only

under the first prong of the WSLA, but also under the third.  *See id.*  Accordingly,

Mr. Burnett's claim could reasonably be considered to be without merit, and his

appellate counsel was not ineffective for failing to raise the claim.  *See Nyhuis*, 211

F.3d at 1344.  Mr. Burnett's first subclaim is, therefore, due to be denied.

### B. Jury Instructions

In his second subclaim, Mr. Burnett argues that his appellate counsel was

ineffective for failing to argue that the trial court erred by not instructing the jury

on the statute of limitations to allow the jury to decide the WSLA issue.  (Doc. 1 at

47–56).  Mr. Burnett cannot succeed on his claim that his appellate counsel was

ineffective because he cannot make the required showing of deficient performance

or prejudice.  *See Strickland* 466 U.S. at 687–88.

As an initial matter, a defense based on the statute of limitations is not

jurisdictional and, thus, is an affirmative defense that can be waived.  *United States

v. Najjar*, 283 F.3d 1306, 1309 (11th Cir. 2002).  Under Federal Rule of Criminal

Procedure 12(b), a defense alleging a defect in instituting the prosecution—

including preindictment delay—or a defect in the indictment or information, "must

be raised by pretrial motion if the basis for the motion is then reasonably available

and the motion can be determined without a trial on the merits."

Fed. R. Crim. P. 12(b).  Based on Rule 12, the Eleventh Circuit has held that

"when a statute of limitations defense is clear on the face of the indictment and

requires no further development of facts at trial, a defendant waives his right to

raise that defense by failing to raise it in a pretrial motion."  *United States v.*

*Ramirez*, 324 F.3d 1225, 1228–29 (11th Cir. 2003) (per curiam).  Here,

Mr. Burnett did not raise his statute of limitations defense—which was clear on the

face of the indictment because it dealt with the applicability of the WSLA to the

charged offenses—in a pretrial motion; instead, his counsel raised the issue at trial

in a motion for acquittal.  (Crim. Doc. 110 at 59–60, 63); (Crim. Doc. 112 at 74).

Thus, the statute of limitations issue was waived, and no jury instruction was

merited.  *See id.*  Therefore, Mr. Burnett's appellate counsel was not ineffective for

failing to raise an issue without merit.  *See Nyhuis*, 211 F.3d at 1344.

Even if the statute of limitations issue was not waived, Mr. Burnett cannot

show that his appellate counsel was ineffective for failing to argue that the district

court erred by not giving jury instructions on the statute of limitations and the

WSLA.  The Eleventh Circuit did note in *Ramirez* that waiver of a statute of

limitations issue due to the failure to file a pretrial motion would not necessarily always apply because "there may be times when a statute of limitations defense cannot be raised before trial because the development of facts pertaining to that defense is necessary." *Ramirez*, 324 F.3d at 1228.  Mr. Burnett's counsel thought that his case was one such situation.  (Crim. Doc. 110 at 60).  The court disagrees, but, even if that were true, Mr. Burnett cannot show that a claim regarding the trial court's failure to give a jury instruction would have had a reasonable probability of success on appeal.  *See Strickland*, 466 U.S. at 694.

A district court errs in refusing to give a jury instruction only if "the instruction '(1) is correct, (2) is not substantially covered by other instructions which were delivered, and (3) deals with some point so 'vital' that the failure to give the requested instruction seriously impaired the defendant's ability to defend.'"  *United States v. Mayweather*, 991 F.3d 1163, 1175 (11th Cir. 2021) (quoting *United States v. Ruiz*, 59 F.3d 1151, 1154 (11th Cir. 1995)).  The Eleventh Circuit has held that, where there is conflicting factual evidence regarding when offenses occurred, courts should issue a statute of limitations instruction to the jury.  *See United States v. Edwards*, 968 F.2d 1148, 1153 (11th Cir. 1992) (holding that a jury instruction on the statute of limitations should have been given where the jury "could have found that the 1983 offenses occurred outside of the limitations period").  However, "the interpretation and application of

a statute of limitations is a legal question." *United States v. Farias*, 836 F.3d 1315, 1323 (11th Cir. 2016).  Questions of law are decided by the court, not the jury.  *See United States v. Houston*, 456 F.3d 1328, 1340 (11th Cir. 2006) (stating that whether a defendant's prior conviction fell into a certain category was "a question of law, to be decided by the court, not a question of fact").

In this case, there is no factual question regarding whether Mr. Burnett's wire fraud counts fell within the statute of limitations as extended by the WSLA. Mr. Burnett makes no argument that there was a factual issue at trial regarding the date when his offenses were committed.  Further, the indictment against Mr. Burnett alleged fraud only against the United States government.  (Crim. Doc. 1).  No other victim of Mr. Burnett's fraud was alleged, so, for the jury to find Mr. Burnett guilty of the charged offenses, he necessarily committed fraud against the United States.  In fact, even Mr. Burnett's own counsel acknowledged that the allegations in the indictment, if proven, would show that the WSLA applied. (Crim. Doc. 110 at 63).  Accordingly, there was no conflicting factual evidence relating to the statute of limitations that needed to be decided by the jury; either Mr. Burnett was guilty and the WSLA applied or he was not guilty and the statute of limitations issue was moot.  *See Edwards*, 968 F.2d at 1153.

Mr. Burnett's arguments instead deal with the legal applicability of the WSLA to his offenses—a question of law.  *See Farias*, 836 F.3d at 1323.  Thus,

the question was one for the court, not the jury.  *See Houston*, 456 F.3d at 1340.

Mr. Burnett's appellate counsel had no basis to argue that the district court erred in

failing to give a jury instruction regarding the WSLA because such a failure was

appropriate and did not impair Mr. Burnett's ability to mount a defense.  *See*

*Mayweather*, 991 F.3d at 1175.  Accordingly, Mr. Burnett's appellate counsel was

not ineffective for failing to bring a meritless claim, and his claim is due to be

denied.  *See Nyhuis*, 211 F.3d at 1344.

### 2.  Denial of Counsel

In his second claim for relief, Mr. Burnett argues that he was

unconstitutionally denied his Sixth Amendment right to consult with counsel

because his counsel refused to speak to him for over 87 hours during a recess

before he took the witness stand and during his witness testimony.  (Doc. 1 at 56–

79).  He argues that the unconstitutional denial of his right to counsel created a

presumption of prejudice requiring a new trial.  (*Id.*).  In explaining his second

claim, Mr. Burnett relies primarily on Supreme Court holdings in *Geders v. United*

*States*, 425 U.S. 80 (1976), *United States v. Cronic*, 466 U.S. 648 (1984), and

*Perry v. Leeke*, 488 U.S. 272 (1989), to support his argument that he was denied

counsel in a way that violated his Sixth Amendment rights to the extent that

prejudice is presumed and a new trial is required.  (Doc. 1 at 56–79).  However,

those cases do not apply to Mr. Burnett's situation and Mr. Burnett is not entitled

to relief on his claim.

In *Geders*, the Supreme Court dealt with whether "a trial court's order directing petitioner, the defendant in a federal prosecution, not to consult his attorney during a regular overnight recess, called while petitioner was on the stand as a witness and shortly before cross-examination was to begin, deprived him of the assistance of counsel in violation of the Sixth Amendment." 425 U.S. at 81. Similarly, in *Perry,* the Supreme Court held that a trial judge can prevent a defendant from talking to his attorney during a short recess during the defendant's testimony without violating the defendant's Sixth Amendment rights. *Perry*, 488 U.S. at 283–85. *Cronic* addressed whether "surrounding circumstances" in a defendant's representation could "make it unlikely that the defendant could have received the effective assistance of counsel." 466 U.S. at 666. All three cases dealt with circumstances outside of run-of-the-mill ineffective assistance of counsel and, specifically in *Geders* and *Perry*, with court orders that kept a defendant from conferring with counsel.

In this case, unlike in *Geders* and *Perry*, no action by the court deprived Mr. Burnett of the ability to consult with his counsel. In fact, the court clarified for the record that it did not, as a matter of practice, prevent criminal defendants from conferring with counsel. (Crim. Doc. 112 at 4–6). When Mr. Burnett alerted the court that his counsel was not conferring with him, the court stated not only that

counsel could talk to Mr. Burnett, but that it had never prevented a criminal defendant from speaking to counsel. *Id.* As such, the cases on which Mr. Burnett relies are inapposite because neither the court nor the circumstances acted to deny Mr. Burnett access to counsel.

In fact, as Eleventh Circuit precedent makes clear, Mr. Burnett cannot show under the circumstances of his case that he was denied counsel in violation of the Sixth Amendment. The Eleventh Circuit has held that, "a condition precedent to a *Geders*-like Sixth Amendment claim" is the demonstration that the defendant was actually deprived of counsel because he and his lawyer wished to confer "but were precluded from doing so by the district court." *United States v. Nelson*, 884 F.3d 1103, 1109 (11th Cir. 2018). The record in this case shows no such deprivation; both the record and Mr. Burnett's claims show that his counsel simply decided not to confer with him without direction from the court. In fact, the court immediately clarified that Mr. Burnett could talk to his counsel when he raised the issue. (Crim. Doc. 112 at 4–6). Accordingly, Mr. Burnett cannot show a deprivation of counsel in violation of his Sixth Amendment rights.

Because Mr. Burnett cannot show that he was denied counsel in violation of his Sixth Amendment rights, the court will liberally construe his claim as being

one of ineffective assistance of trial counsel under the Sixth Amendment.[5]  As discussed above, to show ineffective assistance of counsel a petitioner must show deficient performance and prejudice.  *Strickland*, 466 U.S. at 687–88.  To prove prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  *Id.* at 700.

In his Section 2255 motion, Mr. Burnett fails to show how his counsel's failure to consult with him during a recess and on the stand prejudiced him.  He says that he made mistakes in his testimony that he wanted to correct but does not explain what he mistakenly testified to or why it was material to his defense.  (Doc. 1 at 62–67).  Mr. Burnett does not make any argument regarding how the outcome of the proceedings would have been different if his counsel had consulted with him; he certainly does not show that, but for counsel's failure to consult with him, he would have been acquitted.  *See Strickland*, 466 U.S. at 694.  He simply does not produce any arguments that would overcome the evidence of his guilt, which the court characterized as "overwhelming."  (Crim. Doc. 79 at 3); (Crim. Doc. 101 at 24).  Instead, he argues that his deprivation of counsel created a presumption of

---

[5] *Pro se* filings like Mr. Burnett's motion are entitled to liberal construction. *Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000).

prejudice.  (Doc. 1 at 37–54).  Since there was no deprivation of counsel, that

argument is unavailing, and Mr. Burnett has not shown prejudice for his claim

relating to his counsel's refusal to speak with him during the recess before he

testified and while he testified.  The failure to show prejudice is fatal to his claim,

so the claim is due to be dismissed.  *See Strickland*, 466 U.S. at 700.

### 3.  Ineffective Assistance of Appellate Counsel Regarding "Autonomy"

In his third and final claim, Mr. Burnett argues that his appellate counsel

provided ineffective assistance by failing to argue that the trial court impermissibly

allowed counsel to "usurp control of an issue within Burnett's sole prerogative"

and impermissibly failed to intervene when he was denied counsel.  (Doc. 1 at 80–

84).  Mr. Burnett cannot succeed on his claim because it is facially meritless and

appellate counsel is not required to bring meritless claims.  *See Nyhuis*, 211 F.3d at

1344.

Mr. Burnett argues that his appellate counsel was ineffective for not arguing

that the trial court violated his "protected autonomy right" by failing to intervene in

the usurpation of his rights and the denial of counsel, even after he alerted the court

to the denial of counsel through a note.  (Doc. 1 at 80–84).  As an initial matter,

the language of usurpation and autonomy rights used by Mr. Burnett arises in cases

quite different from Mr. Burnett's.  For instance, Mr. Burnett relies primarily on

the Supreme Court's decision in *McCoy v. Louisiana*, which dealt with a

defendant's right under the Sixth Amendment "to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." 138 S. Ct. 1500, 1505 (2018). Thus, the issue in that case was the usurpation of the right of a defendant to maintain his innocence. Such a matter is not at issue in this case; there is no indication that Mr. Burnett was deprived of his right to protest his innocence or his right to mount a defense. *McCoy*'s usurpation language is therefore inapposite.

Mr. Burnett also cites an Eleventh Circuit dissent that raises the idea of the court's "protecting duty," which requires intervention "when the court is put on notice that the defendant lacks assistance of counsel." *Stano v. Dugger*, 921 F.2d 1125, 1163 (11th Cir. 1991) (Tjoflat, J., dissenting). That argument also fails. First, as discussed above, Mr. Burnett was not denied the right to counsel. Further, Mr. Burnett's argument that the court failed in any duty to intervene based on a lack of assistance of counsel is facially belied by the record. After Mr. Burnett alerted the court that his counsel was not speaking with him, the court gave counsel time to talk to Mr. Burnett. (Crim. Doc. 112 at 4). Counsel then told the court that any issues could be cleared up on redirect. (*Id.*). Further, the court noted the excellence of Mr. Burnett's counsel multiple times on the record, stating that counsel was well prepared and effective. (Crim. Doc. 112 at 169); (Crim. Doc. 79

at 3); (Crim. Doc. 101 at 21).  The court went on to state that there was no colorable argument that Mr. Burnett's counsel was ineffective.  (Crim. Doc. 79 at 1).  Thus, the court believed that Mr. Burnett received not only adequate but "outstanding" assistance from his trial counsel and the court was not on notice of any need to intervene to protect Mr. Burnett from a denial of counsel.  (Crim. Doc. 101 at 21).  Accordingly, Mr. Burnett's claim is facially meritless in light of the record and his appellate counsel was not ineffective for failing to raise the claim on appeal.  *See Nyhuis*, 211 F.3d at 1344.

## IV.   CONCLUSION

As set forth above, all of Mr. Burnett's claims lack merit and are due to be denied.  Further, the claims fail even taking all of his factual allegations as true. The law and the record preclude granting Mr. Burnett relief, so no evidentiary hearing is necessary.  *See Schriro*, 550 U.S. at 474.  Accordingly, Mr. Burnett has not established a sufficient basis for relief pursuant to Section 2255 and the court **will DENY** Mr. Burnett's motion to vacate his sentence, (Doc. 1); (Crim. Doc. 119).  A separate Order will be entered contemporaneously with this Memorandum Opinion.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2255 Proceedings provides, "[t]he district court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant."  An applicant for Section 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).  And, the "certificate of appealability may issue [. . .] *only* if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2) (emphasis added).  To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and internal quotations omitted).

In this case, all of Mr. Burnett's claims are meritless and reasonable jurists could not disagree.  He has not demonstrated that the issues he raises are reasonably debatable and/or deserve encouragement to proceed further.  Therefore, issuance of a certificate of appealability is not warranted in this case.

**DONE** and **ORDERED** this 26th day of May, 2021.

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE